*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DIANE NASRALLAH and MARIAM BAYDOUN,

        Plaintiffs,

and

BACK IN MOTION CHIROPRACTIC, DC, PLLC,

        Intervening Plaintiff-Appellant,

v

ARGONAUT-MIDWEST INSURANCE
COMPANY,

        Defendant-Appellee.

UNPUBLISHED
November 10, 2022

No. 360277
Wayne Circuit Court
LC No. 20-002276-NI

Before: GARRETT, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

        In this no-fault personal protection insurance (PIP) dispute, intervening plaintiff medical provider Back In Motion Chiropractic, DC, PLLC appeals by leave granted[1] the trial court's order granting partial summary disposition to defendant insurer, Argonaut-Midwest Insurance Company ("AMIC"). As relevant here, the trial court granted summary disposition in AMIC's favor on Back In Motion's PIP claims for mechanical traction, therapeutic exercise, heat therapy, and trigger point therapy treatment administered to AMIC's insured, plaintiff Mariam Baydoun. Because the trial court erred by concluding as a matter of law that these services were not eligible for reimbursement under the no-fault act, we reverse and remand.

---

[1] *Nasrallah v Argonaut-Midwest Ins Co*, unpublished order of the Court of Appeals, entered April 7, 2022 (Docket No. 360277).

# I. FACTUAL BACKGROUND

This case arises out of treatment that Baydoun obtained for injuries allegedly sustained in a 2019 car accident. Baydoun brought suit against AMIC, asserting that it unreasonably refused to pay PIP benefits under the no-fault act, MCL 500.3101 *et seq*. In particular, this PIP dispute involves various modalities of treatment that were administered by Back In Motion's "owner/operator," Dr. Hassan Reichouni. Baydoun assigned her right to direct payment to Back In Motion, which intervened to seek reimbursement for treatment rendered by Dr. Reichouni to Baydoun.

AMIC does not dispute that, during the pertinent timeframe, Dr. Reichouni was licensed in Michigan as both a massage therapist and a chiropractor. In his affidavit, Dr. Reichouni described his treatment of Baydoun as follows:

> 9. On October 22, 2019, I performed an initial examination of Mariam Baydoun. I found severe reductions in her cervical and lumbar range of motion, muscle spasms, and positive cervical and lumbar orthopedic tests. Palpatory analysis of the patient's spine revealed multiple subluxations throughout her spine. On that date and each subsequent visit, I performed manual chiropractic adjustments as well as intersegmental mechanical traction to correct her spinal subluxations and related bones and tissues for the establishment of neural integrity.

> 10. I also applied traditional massage therapy techniques and modalities, as well as complementary methods on Mariam Baydoun, including application of moist hot packs and targeted manual massage of the trigger points with my thumbs and/or elbows (trigger point therapy), in keeping with my education, training, and experience as a massage therapist.

> 11. Mariam Baydoun also participated in rehabilitative exercise that involved her active participation in strengthening, range of motion, and stretching against resistance.

> *  *  *

> 13. Based on my training and experience, physical examination of the patient and review of the records, it is my opinion that the chiropractic and massage therapy treatment provided to Ms. Baydoun was reasonably necessary for her care, recovery and rehabilitation for injuries she sustained as a result of the motor vehicle collision . . . .

> 14. All of the care, treatment and evaluations provided by me falls within the scope of my licensure as a massage therapist or a chiropractic physician as authorized by the Michigan Public Health Code.

AMIC moved for partial summary disposition, seeking dismissal of Back In Motion's medical-provider claims for PIP benefits related to "chiropractic services not eligible for reimbursement." Specifically, AMIC sought dismissal of $31,945 of Back In Motion's billed services, including all pre-July 2, 2021 charges for mechanical traction, therapeutic services,

massage therapy, trigger point therapy, and heat therapy. AMIC argued that such services were not subject to reimbursement because they fell "outside the scope of the practice of chiropractic . . . as of January 1, 2009" for purposes of MCL 500.3107b(b). AMIC also contended that the massage therapy services provided by Dr. Reichouni were not reimbursable PIP benefits because they were physical therapy services that were not performed by a licensed physical therapist. In response, Back In Motion argued that summary disposition was unwarranted because all the relevant services were performed either as statutorily authorized massage therapy services or as compensable chiropractic services.

After entertaining oral argument, the trial court partially granted and partially denied AMIC's motion for partial summary disposition. The trial court denied summary disposition on the massage therapy services, but granted summary disposition as to the disputed "mechanical traction" treatment. The trial court reasoned that, under *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55; 535 NW2d 529 (1995), summary disposition on the mechanical traction claims was warranted because "where mechanical traction is used for therapeutic purposes, it is a passive treatment procedure and therefore, is outside the scope of chiropractic" under MCL 500.3107b(b). After the parties sought clarification about the court's ruling on the remaining three disputed services, the trial court stated without explanation that it was granting summary disposition on all claims except for massage therapy. The trial court denied Back In Motion's motion for reconsideration, and this appeal of the trial court's partial grant of summary disposition followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Measel v Auto Club Group Ins Co*, 314 Mich App 320, 326; 886 NW2d 193 (2016). Underlying the trial court's summary disposition ruling are questions of statutory interpretation, which we likewise review de novo. *Id.* "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019).

Although AMIC cited both MCR 2.116(C)(8) and (C)(10) in support of its motion for partial summary disposition, we review the trial court's ruling under subrule (C)(10) exclusively, given that the trial court considered evidence outside the pleadings. See *Krass v Tri-County Security*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted).]

## III. ANALYSIS

Back In Motion argues that the trial court erred by granting summary disposition in AMIC's favor on Back In Motion's PIP claims related to mechanical traction, therapeutic exercise, heat therapy, and trigger point therapy services provided to Baydoun.

"Generally, under the no-fault act, [PIP] benefits are payable for medical expenses that are lawfully rendered and reasonably necessary for an insured's care, recovery, and rehabilitation." *Measel*, 314 Mich App at 326, citing MCL 500.3107.[2] MCL 500.3107b acts as an exception to this general rule, limiting the types of services insurance providers must reimburse. See *Measel*, 314 Mich App at 327. In relevant part, MCL 500.3107b provides:

> Reimbursement or coverage for expenses within personal protection insurance coverage under section 3107 is not required for any of the following:
>
> * * *
>
> (b) A practice of chiropractic service rendered before July 2, 2021, *unless that service was included in the definition of practice of chiropractic under section 16401 of the public health code, 1978 PA 368, MCL 333.16401, as of January 1, 2009.* [Emphasis added.]

In other words, if a pre-July 2, 2021 "service falls within PIP coverage under MCL 500.3107 and is '[a] practice of chiropractic service' under MCL 500.3107b(b), reimbursement is only required under the no-fault act if the service was included in the definition of 'practice of chiropractic' under MCL 333.16401 as that statute existed on January 1, 2009." *Measel*, 314 Mich App at 328 (alteration in original). To determine which services fall within that statutory definition, this Court often looks to pre-January 1, 2009 decisions such as *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55; 535 NW2d 529 (1995), which construed the pertinent statutory provisions—including MCL 333.16401—at some length. See, e.g., *Precise MRI of Mich, LLC v State Auto Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. No. 354653), slip op at 5-8; *Skwierc v Whisnant*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 355133), slip op at 5-7.

Consistent with the dates set forth by MCL 500.3107b(b), AMIC sought partial summary disposition on Back In Motion's claims for reimbursement of pre-July 2, 2021 treatment to Baydoun on the basis that the disputed services were outside the scope of the January 1, 2009 definition of "practice of chiropractic." The trial court granted summary disposition on Back In Motion's claims involving mechanical traction, therapeutic exercise, trigger point therapy, and heat therapy services, which Back In Motion argues was erroneous. We address each of the disputed treatment modalities in turn.

---

[2] Subject to exception, MCL 500.3107 states that PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a).

A.  MECHANICAL TRACTION

Back In Motion first argues that the mechanical traction services fall within the scope of chiropractic practice as defined by statute on January 1, 2009.

As of January 1, 2009, MCL 333.16401(1) provided:

> (b) "Practice of chiropractic" means that discipline within the healing arts which deals with the human nervous system and its relationship to the spinal column and its interrelationship with other body systems.  Practice of chiropractic includes the following:
>
> (*i*) Diagnosis, including spinal analysis, to determine the existence of spinal subluxations or misalignments that produce nerve interference, indicating the necessity for chiropractic care.
>
> (*ii*) *A chiropractic adjustment of spinal subluxations or misalignments and related bones and tissues for the establishment of neural integrity* utilizing the inherent recuperative powers of the body for restoration and maintenance of health.
>
> (*iii*) The use of analytical instruments, nutritional advice, rehabilitative exercise and adjustment apparatus regulated by rules promulgated by the board pursuant to section 16423, and the use of x-ray machines in the examination of patients for the purpose of locating spinal subluxations or misaligned vertebrae of the human spine.  The practice of chiropractic does not include the performance of incisive surgical procedures, the performance of an invasive procedure requiring instrumentation, or the dispensing or prescribing of drugs or medicine.  [MCL 333.16401(1), as amended by 2002 PA 734 (emphasis added).]

Consistent with this statutory definition, the *Hofmann* Court held that "traction is within the scope of chiropractic when used for purposes of correcting a subluxation or misalignment of the vertebral column or related bones and tissues, but excluded when used for therapeutic, treatment purposes." *Hofmann*, 211 Mich App at 82.[3]

In opposing summary disposition, Back In Motion presented Dr. Reichouni's affidavit, in which he stated that he "performed manual chiropractic adjustments as well as intersegmental mechanical traction to correct [Baydoun's] spinal subluxations and related bones and tissues for the establishment of neural integrity."  AMIC presented no substantively admissible evidence to the contrary.  Thus, Dr. Reichouni's undisputed attestation is more than enough to yield a genuine issue of material fact that the mechanical traction services were for correcting a spinal subluxation, and therefore fall within the January 1, 2009 definition of "practice of chiropractic" under MCL 500.3107b(b). See *Hofmann*, 211 Mich App at 82; former 333.16401(1)(b)(*ii*).  Accordingly, the

---

[3] When *Hofmann* was decided in 1995, MCL 333.16401(1) was identical to the January 1, 2009 version except for a few nonsubstantive differences not relevant to our analysis.

trial court erred by granting AMIC summary disposition on the disputed claims for mechanical traction.

## B. THERAPEUTIC EXERCISE

Back In Motion next argues that the therapeutic exercises are compensable services under the no-fault act because they are active rehabilitative services that fall within the January 1, 2009 definition of "practice of chiropractic."

As noted, "practice of chiropractic" included the use of "rehabilitative exercise" in the statute existing on January 1, 2009. Former MCL 333.16401(1)(b)(*iii*). In *Hofmann*, 211 Mich App at 77, this Court explained that "rehabilitative exercise" does not include "passive treatment procedures." Rather, rehabilitative exercises fall within the practice of chiropractic when they involve "active movement." *Id*. at 78. Again, in opposing summary disposition, Back In Motion presented Dr. Reichouni's affidavit testimony, in which he attested that Baydoun "participated in rehabilitative exercise that involved her active participation in strengthening, range of motion, and stretching against resistance." Evidence that Baydoun actively engaged in the rehabilitative exercises is sufficient to create a genuine issue of material fact as to whether such exercises fall within the January 1, 2009 "definition of practice of chiropractic" for purposes of MCL 500.3107b(b). See *Hofmann*, 211 Mich App at 76-78. Thus, the trial court erred by granting AMIC summary disposition on Back In Motion's "therapeutic exercise" claims.

## C. HEAT THERAPY

On the other hand, *Hofmann* does, in fact, support AMIC's argument that the disputed "heat therapy" services fall outside the proper "definition of practice of chiropractic" for purposes of MCL 500.3107b(b). See *Hofmann*, 211 Mich App at 79-81 (" . . . [W]e are compelled to conclude that heat and cold are not included within the scope of chiropractic practice"). But the exclusion of such treatment from the January 1, 2009 definition of "chiropractic" services is not, standing alone, fatal to Back In Motion's heat-therapy claim. See *id*. at 65 ("[T]o the extent that plaintiffs are found to have engaged in the exercise of a health-care activity that is excluded from the statutory scope of chiropractic, that mere fact of exclusion does not, by itself, lead to the conclusion that the activity was rendered unlawfully.") Put differently, if Back In Motion "engaged lawfully in the exercise of an activity that is excluded from the scope of chiropractic, then the expense for that activity will be payable as a no-fault benefit if it constitutes an allowable expense under [MCL 500.3107] of the no-fault act." *Id*. at 67.

As noted, it is undisputed that Dr. Reichouni is a licensed massage therapist. MCL 333.17951(1)(d) provides:

> "Practice of massage therapy" means the application of a system of structured touch, pressure, movement, and holding to the soft tissue of the human body in which the primary intent is to enhance or restore the health and well-being of the client. Practice of massage therapy includes complementary methods, *including the external application of* water, *heat*, cold, lubrication, salt scrubs, body wraps, or other topical preparations; and electromechanical devices that mimic or enhance the actions possible by the hands. *Practice of massage therapy does not*

*include* medical diagnosis; *practice of physical therapy*; high-velocity, low-amplitude thrust to a joint; electrical stimulation; application of ultrasound; or prescription of medicines. [Emphasis added.]

In light of that statutory definition, Dr. Reichouni's undisputed status as a licensed massage therapist, and his affidavit testimony that his "application of moist hot packs" was performed "in keeping with [his] education, training, and experience as a massage therapist," we perceive no basis to conclude that the heat-therapy services were performed unlawfully.

AMIC contends that Dr. Reichouni's status as a licensed massage therapist does not change whether the charges are reimbursable because the disputed services require a licensed physical therapist to obtain reimbursement under the no-fault act. This argument relies on a different provision of MCL 500.3107b, which states:

Reimbursement or coverage for expenses within personal protection insurance coverage under section 3107 is not required for any of the following:

* * *

(c) A practice of physical therapy service or practice as a physical therapist assistant service, unless that service was provided by a licensed physical therapist or physical therapist assistant under the supervision of a licensed physical therapist under a prescription from a health care professional who holds a license issued under part 166, 170, 175, or 180 of the public health code, 1978 PA 368, MCL 333.16601 to 333.16659, 333.17001 to 333.17097, 333.17501 to 333.17556, and 333.18001 to 333.18058, or the equivalent license issued by another state.

Licensure as a massage therapist is not governed by any of the parts of the Public Health Code, MCL 333.1101 *et seq*., referenced in MCL 500.3107b(c). Rather, such licensure is governed by part 179a of the Public Health Code, MCL 333.17951 to MCL 333.17969. In defining the "[p]ractice of massage therapy," the Legislature expressly stated that such practice "does not include . . . [the] practice of physical therapy." MCL 333.17951(1)(d). Thus, we reject AMIC's argument to the extent that it suggests that Dr. Reichouni's massage therapy services are simply physical therapy services subject to MCL 500.3107b(c). The no-fault act's limits on reimbursement of PIP benefits for physical therapy services do not restrict Back In Motion's entitlement to reimbursement for massage therapy services performed by a licensed massage therapist. Accordingly, the trial court erred by concluding that AMIC was entitled to summary disposition under MCL 500.3107b.

## D. TRIGGER POINT THERAPY

As with the heat-therapy services, there is authority suggesting that the trigger point massage therapy falls outside the January 1, 2009 "definition of practice of chiropractic" for purposes of MCL 500.3107b(b). See *Measel*, 314 Mich App at 337 ("[T]he massages do not fall within the former definition of 'practice of chiropractic' under MCL 333.16401 because they involved treatment to areas other than [the patient's] spine."). In his affidavit, Dr. Reichouni stated that he performed "targeted manual massage of the trigger points with [his] thumbs and/or elbows

(trigger point therapy)," and that he did so "in keeping with [his] education, training, and experience as a massage therapist," not as a chiropractor. But Back In Motion presented no evidence specifying that these trigger point massage services were limited to, or even involved, Baydoun's spine.

Again, however, the exclusion of such treatment from the January 1, 2009 definition of "chiropractic" services is not, standing alone, fatal to Back In Motion's massage-therapy claims. See *Hofmann*, 211 Mich App at 65. To reiterate, MCL 333.17951(1)(d) defines the "[p]ractice of massage therapy" as "the application of a system of structured *touch, pressure, movement, and holding to the soft tissue of the human body* in which the primary intent is to enhance or restore the health and well-being of the client." (Emphasis added.) Dr. Reichouni attested that the disputed trigger-point therapy was performed "in keeping with [his] education, training, and experience as a massage therapist." Considering the statutory definition of massage therapy, along with Dr. Reichouni's affidavit testimony, a genuine issue of material fact exists whether the trigger point therapy services are reimbursable expenses under the no-fault act.[4] By concluding that summary disposition on these claims was appropriate, the trial court erred.

E. ALTERNATIVE GROUND FOR AFFIRMANCE

Finally, we must address an argument raised by AMIC as an alternative ground for affirmance.[5] In *Belcher v Ford Motor Co*, 333 Mich App 717, 728; 963 NW2d 423 (2020), this Court held that, under the Worker's Disability Compensation Act of 1969 (WDCA), MCL 418.101 *et seq.*, "an employer is not required to reimburse for *any* service performed by a massage therapist," and "the WDCA only *requires* reimbursement for massages if they are (1) prescribed by certain healthcare professionals and (2) performed by a licensed physical therapist or physical therapist assistant under the supervision of a licensed physical therapist." AMIC argues that such holdings should be extended to the no-fault context because the no-fault act and WDCA should be construed together under the rule of *in pari materia*. This rule of statutory construction "holds that statutes relating to the same subject or sharing a common purpose should be read together as one, even if the two statutes contain no reference to each other and were enacted at different times." *Summer v Southfield Bd of Ed*, 324 Mich App 81, 93; 919 NW2d 641 (2018).

We are unpersuaded by AMIC's argument. *Belcher*'s relevant holdings were premised exclusively on a provision of the WDCA, MCL 418.315(1), not any section of the no-fault act. There is no basis for importing that provision of the WDCA into the no-fault act via the *in pari materia* canon of construction as AMIC suggests. See *Mathis v Interstate Motor Freight Sys*, 408

---

[4] Whether the services provided by Dr. Reichouni as a licensed massage therapist *otherwise* constitute an "allowable expense" under MCL 500.3107 is an issue not raised by AMIC. See generally *In re Carroll (On Remand)*, 300 Mich App 152, 171-172; 832 NW2d 276 (2013) (discussing the various requirements for a given "product, service, or accommodation" to be considered an "allowable expense" for purposes of the no-fault act).

[5] An appellee is "not required to file a cross-appeal to assert an alternative basis for affirmance in this Court." *In re Smith Trust*, 274 Mich App 283, 285 n 2; 731 NW2d 810 (2007), aff'd 480 Mich 19 (2008).

Mich 164, 179; 289 NW2d 708 (1980) (recognizing that the WDCA and no-fault act "are complete and self-contained legislative schemes addressing discrete problems" and that "[n]either act refers expressly to the other"). Therefore, we reject AMIC's argument that *Belcher*'s relevant holdings concerning the WDCA apply with equal force in the no-fault context.

## IV. CONCLUSION

For those reasons, we reverse the trial court's grant of partial summary disposition to AMIC and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Colleen A. O'Brien
/s/ James Robert Redford