# STATE OF MICHIGAN

# COURT OF APPEALS

JENIFER MEASEL,

      Plaintiff-Appellee,

v

AUTO CLUB GROUP INSURANCE
COMPANY,

      Defendant-Appellant.

FOR PUBLICATION
February 9, 2016
9:05 a.m.

No. 324261
Oakland Circuit Court
LC No. 2014-139659-AV

Before: CAVANAGH, P.J., and RIORDAN and GADOLA, JJ.

GADOLA, J.

Auto Club Group Insurance Company (Auto Club) appeals by leave granted the circuit court's opinion and order concluding that expenses associated with Jenifer Measel's new patient examination, ultrasound therapy, and massage therapy performed in a chiropractor's clinic were reimbursable under Michigan's no-fault act, MCL 500.3101 *et seq*. We reverse and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

On August 28, 2012, Measel sustained bodily injuries as the result of an automobile accident. Three days later, she presented to Complete Care Chiropractic (the Clinic), complaining of pain in her back, neck, and shoulders, and numbness in her wrists. Dr. Rosemary Batanjski performed a 45-minute new patient examination, and, according to Clinic records, Measel received ultrasound therapy to her neck and thoracic spine and massage therapy from Batanjski's staff. Over the next two months, Measel received several additional therapeutic massages at the Clinic, each of which included massage of her extremities. Measel also received several additional treatments of ultrasound therapy.

The Clinic billed both Auto Club and Blue Cross Blue Shield of Michigan for the expenses associated with Measel's care.[1] Blue Cross refused to cover expenses associated with (1) one $80 charge for Measel's new patient examination, (2) two $40 charges for ultrasound

---

[1] At the time of the accident, Measel had coordinated no-fault medical coverage with Auto Club.

-1-

therapy, and (3) five $100 charges for massage therapy. Auto Club also denied reimbursement for these charges, explaining that the charges were for services that were "outside the scope of chiropractic in Michigan" and therefore were not "reimbursable as an allowable expense under the Michigan No-Fault act."

Measel then filed a complaint in the 46th District Court, seeking damages for the unpaid medical bills. In response, Auto Club filed a motion for summary disposition under MCR 2.116(C)(10), arguing that the new patient examination, massage therapy, and ultrasound therapy fell outside the Public Health Code's, MCL 333.1101 et seq., definition of "practice of chiropractic" as it existed on January 1, 2009, and were therefore excluded from reimbursement under MCL 500.3107b(b).[2] Auto Club further argued that the exclusion of MCL 500.3107b(b) applied despite the fact that some of the services were administrated by Batanjski's staff because MCL 333.16215(1) allows a chiropractor to delegate tasks within the scope of chiropractic practice to other qualified individuals.

Measel responded that the services were reimbursable because they fell under the current definition of "practice of chiropractic" provided by MCL 333.16401. She argued that the new definition, effective January 5, 2010, "was intended to supplant and replace the prior version of [MCL 333.16401] including amending the provisions of MCL 500.3107b." Alternatively, Measel argued that the services were reimbursable even if they fell outside the definition of "practice of chiropractic" because they were reasonably necessary for her accident-related care.

The district court denied Auto Club's motion for summary disposition, concluding that it was unnecessary to decide the complicated issue of whether the services were "within the scope of chiropractic." Rather, the court "assume[d] for the sake of argument all three treatments are not chiropractic services," then held that the only relevant issue was whether the services were lawfully rendered and reasonably necessary for Measel's accident-related care, which it concluded was a question of fact for the jury. On stipulation of the parties, the district court then entered an order in which Auto Club agreed that the services were reasonably necessary for Measel's care and that the amount charged for the services was reasonable. However, Auto Club reserved the right to appeal the district court's denial of its motion for summary disposition.

Thereafter, Auto Club filed a claim of appeal in the Oakland Circuit Court. In a written opinion, the circuit court affirmed the district court's denial of Auto Club's motion for summary disposition. The court first determined that under MCL 500.3107b(b), the Legislature intended to limit reimbursement under the no-fault act for any "chiropractic services unless those services were included in the Public Health Code's definition of 'practice of chiropractic' as of January 1, 2009." The court concluded that the district court erred by simply assuming that all of the services fell outside the definition of "practice of chiropractic" before considering whether the

---

[2] As discussed in more detail below, MCL 500.3107b(b) provides that reimbursement for expenses within personal protection insurance (PIP) coverage is not required for "[a] practice of chiropractic service, unless that service was included in the definition of practice of chiropractic under [MCL 333.16401] . . . as of January 1, 2009."

-2-

services were lawfully rendered and reasonably necessary; however, the court nonetheless determined that each of the three services was reimbursable under the no-fault act.

Specifically, the court determined that the new patient examination fell within the definition of "practice of chiropractic" as it existed on January 1, 2009, because Dr. Batanjski "did not undertake differential diagnostic techniques to diagnose or rule out the existence of localized non-spinal ailments" and did not attempt to diagnose conditions of the "arms, hands or wrists." The court determined that ultrasound and massage therapy both fell outside the former definition of "practice of chiropractic," but concluded that the services were reimbursable because they were lawfully rendered and reasonably necessary for Measel's care. Further, the court concluded that MCL 333.16215 did not apply because Dr. Batanjski did not "delegate" the performance of the massage therapy, but rather only "recommended" the treatment for Measel.[3]

## II. STANDARDS OF REVIEW

This Court reviews a lower court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). This Court also reviews questions of statutory interpretation de novo. *Spectrum Health Hosps v Farm Bureau Mut Ins Co*, 492 Mich 503, 515; 821 NW2d 117 (2012). The first step when addressing a question of statutory interpretation is to review the language of the statute. *Id*. "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Id*. (citation and quotation marks omitted). If statutory language is plain and unambiguous, courts must apply it as written. *Karpinski v Saint John Hosp-Macomb Ctr Corp*, 238 Mich App 539, 543; 606 NW2d 45 (1999).

## III. ANALYSIS

Auto Club argues that the circuit court erroneously concluded that it was required to reimburse Measel for expenses associated with her new patient examination, massage therapy, and ultrasound therapy under Michigan's no-fault act. We agree.

Generally, under the no-fault act, personal protection insurance (PIP) benefits are payable to cover medical expenses that are lawfully rendered and reasonably necessary for an insured's care, recovery, and rehabilitation. MCL 500.3107; MCL 500.3157.[4] As an exception to this

---

[3] Auto Club filed a delayed application for leave to appeal in this Court, which was granted on May 19, 2015. *Auto Club Group Ins Co v Measel*, unpublished order of the Court of Appeals, entered May 19, 2015 (Docket No. 324261).

[4] MCL 500.3107(1)(a) provides that PIP benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Likewise, MCL 500.3157 states that "[a] physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance . . . may charge a reasonable amount for the products, services and accommodations rendered."

general rule, in 2009, the Legislature enacted 2009 PA 222, which added MCL 500.3107b(b) to the no-fault act. MCL 500.3107b(b) provides the following:

> Reimbursement or coverage for expenses within personal protection insurance coverage under [MCL 500.3107] is not required for any of the following:

> \* \* \*

> (b) A practice of chiropractic service, unless that service was included in the definition of practice of chiropractic under section 16401 of the public health code, 1978 PA 368, MCL 333.16401, as of January 1, 2009.

2009 PA 222 was one of a several tie-barred bills, all effective January 5, 2010, that addressed a tension between chiropractors and insurance providers regarding the scope of chiropractic practice and related insurance liability. Along with 2009 PA 222, the Legislature also enacted 2009 PA 223, which expanded the scope of the definition of "practice of chiropractic" under MCL 333.16401 of the Public Health Code. Thus, while 2009 PA 223 expanded the scope of the definition of "practice of chiropractic," 2009 PA 222 limited insurance providers' liability under the no-fault act for newly included services.[5]

Considering the plain language of MCL 500.3107b(b), if a service is "within [PIP] coverage under [MCL 500.3107]," the service is generally reimbursable under the no-fault act unless the exception of MCL 500.3107b applies. Pursuant to MCL 500.3107b(b), reimbursement for a service otherwise covered by MCL 500.3107 "is not required" if the service is (1) "[a] practice of chiropractic service," (2) "unless that service was included in the definition of practice of chiropractic under [MCL 333.16401] . . . as of January 1, 2009."[6] Accordingly, if a service falls within PIP coverage under MCL 500.3107, but is "[a] practice of chiropractic service" under MCL 500.3107b(b), reimbursement is only required under the no-fault act if the

---

[5] The Legislature also amended several other statutes to include similar language limiting third-party liability to cover services that were newly included in the broadened definition of "practice of chiropractic." See, e.g., MCL 550.53(15), as amended by 2009 PA 224 (governing prudent purchaser agreements); MCL 550.1502(11), as amended by 2009 PA 225 (governing contracts for reimbursement with professional healthcare providers); MCL 418.315(1), as amended by 2009 PA 226 (governing employer liability under the Worker's Disability Compensation Act, MCL 418.101 *et seq.*).

[6] This Court has previously defined the phrase "as of January 1, 2009" to mean that MCL 500.3107b(b) is referring to the "text of MCL 333.16401 *as that statute existed* on January 1, 2009." *Warren Chiropractic & Rehab Clinic, PC v Home-Owners Ins Co*, unpublished opinion of the Court of Appeals, issued November 8, 2012 (Docket No. 303919). The parties do not dispute on appeal that this is the proper interpretation of the statutory phrase "as of."

-4-

service was included in the definition of "practice of chiropractic" under MCL 333.16401 as that statute existed on January 1, 2009.

Auto Club admits that each of the disputed services in this case was lawfully rendered and reasonably necessary for Measel's accident-related care. Therefore, these services were within PIP coverage under MCL 500.3107. The next question, then, is whether each of the services was "[a] practice of chiropractic service" for purposes of MCL 500.3107b(b). The statutory phrase "[a] practice of chiropractic service" is not defined in the no-fault act; however, the phrase "practice of chiropractic" is defined by MCL 333.16401 of the Public Health Code. We conclude that the statutory phrase "[a] practice of chiropractic service" in MCL 500.3107b(b) should be interpreted in light of the definition of "practice of chiropractic" in MCL 333.16401 under the rule of in pari materia,[7] because both statutory provisions were enacted at the same time, 2009 PA 222 and 2009 PA 223, and both statutory provisions involve the scope of the statutory phrase "practice of chiropractic." Therefore, a service is only "[a] practice of chiropractic service" for purposes of MCL 500.3107b(b) if that service falls under the current definition of "practice of chiropractic" provided by MCL 333.16401.

The current definition of "practice of chiropractic" in MCL 333.16401(1) is as follows:

> (e) "Practice of chiropractic" means that discipline within the healing arts that deals with the human nervous system and the musculoskeletal system and their interrelationship with other body systems. Practice of chiropractic includes the following:
>
> (*i*) The diagnosis of human conditions and disorders of the human musculoskeletal and nervous systems as they relate to subluxations, misalignments, and joint dysfunctions. These diagnoses shall be for the purpose of detecting and correcting those conditions and disorders or offering advice to seek treatment from other health professionals in order to restore and maintain health.
>
> (*ii*) The evaluation of conditions or symptoms related to subluxations, misalignments, and joint dysfunction through any of the following:
>
> (A) Physical examination.

---

[7] The rule of in pari materia provides that "[i]f two or more statutes arguably relate to the same subject or have the same purpose, they are considered in pari materia and must be read together to determine legislative intent." *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 146; 662 NW2d 758 (2003). The purpose of the rule "is to effectuate the purpose of the Legislature as evinced by the harmonious statutes on a subject." *Travelers Ins v U-Haul of Mich, Inc*, 235 Mich App 273, 279; 597 NW2d 235 (1999). "Two statutes that form a part of one regulatory scheme should be read in pari materia." *People v Stephen*, 241 Mich App 482, 498; 616 NW2d 188 (2000) (citation and quotation marks omitted).

(B) The taking and reviewing of patient health information.

(C) The performance, ordering, or use of tests. The performance, ordering, or use of tests in the practice of chiropractic is regulated by rules promulgated under section 16423.

(D) The performance, ordering, or use of x-ray.

(E) The performance, ordering, or use of tests that were allowed under section 16423 as of December 1, 2009.

(*iii*) The chiropractic adjustment of subluxations, misalignments, and joint dysfunction and the treatment of related bones and tissues for the establishment of neural integrity and structural stability.

(*iv*) The use of physical measures, analytical instruments, nutritional advice, rehabilitative exercise, and adjustment apparatus regulated by rules promulgated under section 16423.

We conclude that the new patient examination, ultrasound therapy, and massage therapy all fell within the current definition of "practice of chiropractic" under MCL 333.16401. Regarding the new patient examination, MCL 333.16401(1)(e)(*ii*)(A) provides that general physical examinations are included under the definition of "practice of chiropractic." Therefore, this service is "[a] practice of chiropractic service" for purposes of MCL 500.3107b(b). Regarding ultrasound and massage therapy, MCL 333.16401(1)(e)(*iv*) states that the "practice of chiropractic" includes "[t]he use of physical measures, analytical instruments, nutritional advice, rehabilitative exercise, and adjustment apparatus regulated by rules promulgated under [MCL 333.16423]." MCL 333.16423(1), in turn, states the following:

The department, in consultation with the board,[8] shall promulgate rules to establish criteria for the performance and ordering of tests and the approval of analytical instruments and adjustment apparatus to be used for the purpose of examining and treating patients for subluxations and misalignments that produce nerve interference or joint dysfunction.

On June 1, 2010, the Michigan Department of Community Health issued a letter to chiropractic licensees outlining an approved list of analytical instruments, adjustment apparatus,

---

[8] At the time the Legislature enacted 2009 PA 223, the "department" referred to the "state department of community health." MCL 333.1104, as amended by 1996 PA 307. MCL 333.1104 now defines "department" to mean "the department of health and human services." The "board" refers to the Michigan Board of Chiropractic. MCL 333.16421.

-6-

tests, and physical measures falling within the broadened scope of chiropractic practice under 2009 PA 223.[9]  The letter stated, in pertinent part, the following:

> With the passage of PA 223, the scope of practice for the Michigan chiropractor has expanded.  The legislation indicates that it takes immediate effect but there are some areas that require the promulgation of administrative rules before all parts of the legislation can take effect.

> \* \* \*

> To assist practicing chiropractors with this new legislation, the Board of Chiropractic has reviewed and updated its list of approved analytical instruments, adjustment apparatus, tests, and measurements.

> \* \* \*

> **PHYSICAL MEASURES**

> Physical measures used for correcting or reducing subluxations, misalignments and joint dysfunctions, including, but not limited to:

> **Massage**—manipulation of superficial layers of muscle and connective tissue to alleviate pain and discomfort.

> \* \* \*

> **Sound**—use of ultrasound to aid in the correction of muscular/skeletal problems to promote healing and restoration of function.

The Michigan Administrative Code does not specifically define "physical measures" to include ultrasound and massage therapy; however, the Code does provide a broad definition of "physical measures," which includes any "procedures or techniques used to correct or reduce subluxations, misalignments, and joint dysfunctions."  2011 Annual Admin Code Supp, R 338.12001.[10] Considering the Department of Community Health's 2010 letter specifically including ultrasound and massage within the scope of "physical measures" for purposes of the definition of "practice of chiropractic," and the Michigan Administrative Code's broad definition of "physical measures," we conclude that ultrasound and massage therapy both fall within the definition of "practice of chiropractic" under MCL 333.16401.  Therefore, each of these services is "[a] practice of chiropractic service" for purposes of MCL 500.3107b(b).

---

[9] Letter from Bureau of Health Professions to Chiropractic Licensees (June 1, 2010).

[10] The definition of "physical measures" provided in the Michigan Administrative Code has not changed since 2011.  See Mich Admin Code, R 338.12001.

Measel argues that the ultrasound and massage therapy were not chiropractic services because the services were performed by ultrasound technicians and massage therapists, rather than Dr. Batanjski herself. Measel's argument is unpersuasive. MCL 333.16215(1) permits a licensee to delegate tasks to another qualified individual, and provides the following:

> [A] licensee who holds a license other than a health profession subfield license may delegate to a licensed or unlicensed individual who is otherwise qualified by education, training, or experience the performance of selected acts, tasks, or functions where the acts, tasks, or functions fall within the scope of practice of the licensee's profession and will be performed under the licensee's supervision.

The Public Health Code does not define the word "delegate," but this Court has previously defined the word for purposes of MCL 333.16215 as "to commit (powers, functions, etc.) to another as agent." *People v Callon*, 256 Mich App 312, 324-325; 662 NW2d 501 (2003) (citation and quotation marks omitted). The Public Health Code defines "supervision" for purposes of MCL 333.16215 to mean that a licensee is required to be continuously available either by direct or electronic communication, to review, consult with, and educate the supervised individual, and to establish predetermined procedures. MCL 333.16109.

At her deposition, Dr. Batanjski explained that when she does not perform therapeutic massages herself, she directs her massage therapists to perform the massages and "explain[s] to them what to work on." Dr. Batanjski testified that she instructs the therapists regarding the pressure to apply and whether to use special techniques. She further described that she began employing massage therapists so she could control all of their treatment protocols. When asked how she directs the massage therapists to perform massages, Dr. Batanjski testified as follows:

> I will tell them what to focus on. I will tell them what to stay away from. I will tell them the contraindications to the patient. . . . They are not trained— they have their minimal training, but I have to make that final decision.

> I may say be careful for this or watch out for that, and they can't lay prone on the table, you have to modify your techniques. I explain why they can't do something.

> Basically, I give them their directions for that case.

Likewise, Dr. Batanjski explained that when she does not perform ultrasound therapy herself, her staff administers the therapy on the basis of her specific directions:

> *Q*. Would they basically be doing the same thing you would be doing, applying ultrasound, same thing?

> *A*. Yes. I have trained them. Before they even see the patient, I show them where on the spine to do it. I tell them how many minutes. That's my instruction, if I am not doing it myself, I tell them how to do it.

Considering Dr. Batanjski's testimony, the circuit court erred by concluding that the massage therapists and ultrasound technicians who performed some of the services in this case

were not operating under the delegation of Dr. Batanjski as a licensed chiropractor. The massage therapists and ultrasound technicians were employed by Dr. Batanjski and they regularly assisted her with patient care. Dr. Batanjski testified that she supervised their work, directed their treatment protocols, and instructed them on how to perform the necessary treatment. Accordingly, the mere fact that Dr. Batanjski did not perform each of the disputed services herself does not bring the ultrasound and massage therapy outside the definition of "practice of chiropractic" under MCL 333.16401.

Pursuant to MCL 500.3107b(b), because each of the services at issue in this case was "[a] practice of chiropractic service," reimbursement is not required unless the service "was included in the definition of practice of chiropractic under [MCL 333.16401] . . . as of January 1, 2009." The definition of "practice of chiropractic" provided by MCL 333.16401 on January 1, 2009, stated the following:

> (b) "Practice of chiropractic" means that discipline within the healing arts which deals with the human nervous system and its relationship to the spinal column and its interrelationship with other body systems. Practice of chiropractic includes the following:

> (*i*) Diagnosis, including spinal analysis, to determine the existence of spinal subluxations or misalignments that produce nerve interference, indicating the necessity for chiropractic care.

> (*ii*) A chiropractic adjustment of spinal subluxations or misalignments and related bones and tissues for the establishment of neural integrity utilizing the inherent recuperative powers of the body for restoration and maintenance of health.

> (*iii*) The use of analytical instruments, nutritional advice, rehabilitative exercise and adjustment apparatus regulated by rules promulgated by the board pursuant to section 16423, and the use of x-ray machines in the examination of patients for the purpose of locating spinal subluxations or misaligned vertebrae of the human spine. The practice of chiropractic does not include the performance of incisive surgical procedures, the performance of an invasive procedure requiring instrumentation, or the dispensing or prescribing of drugs or medicine. [MCL 333.16401(1), as amended by 2002 PA 734.[11]]

In *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 73-74; 535 NW2d 529 (1995), this Court addressed the extent to which a diagnostic examination fell within the former definition of "practice of chiropractic." Citing our Supreme Court's decision in *Attorney General v Beno*, 422

---

[11] The Legislature enacted MCL 333.16401 as part of 1978 PA 368. In 2002, the Legislature enacted 2002 PA 734, which minimally altered the original language by inserting the words "human" and "the following" in the introductory paragraph of subsection (1)(b), and, in subsection (1)(b)(*ii*), substituting the phrase "A chiropractic" for "The."

Mich 293; 373 NW2d 544 (1985), this Court concluded that orthopedic and neurological examination of non-spinal areas fell outside the scope of chiropractic practice under former MCL 333.16401. *Hofmann*, 211 Mich App at 75. The Court explained as follows:

> The orthopedic and neurological examinations in question are all types of physical examinations of nonspinal areas, the purpose of which, by the plaintiffs' own testimony, is to ascertain the effects of nerve interference allegedly caused by a subluxation on other parts of the body. As the Supreme Court observed in *Beno*, however, the effects of nerve interference on other parts of the body can be ascertained only by the elimination of other causes of the symptoms, which entails differential diagnosis, a procedure that is in contravention of both the intent and history of § 16401. For this reason, the Supreme Court concluded that *a chiropractic "diagnosis" is limited to the determination of existing spinal subluxations or misalignments, which can only be located at their source, i.e., the spine.* We conclude, therefore, that orthopedic and neurological examination of nonspinal areas is outside the scope of chiropractic practice. [*Id.* (emphasis added).]

The circuit court concluded that Dr. Batanjski's new patient examination related only "to diagnosing subluxations, that is, conditions of the neck and spine." However, our Supreme Court noted in *Beno*, 422 Mich at 325 that "spinal subluxations and misalignments can only be located at their source," i.e., the spine itself. At her deposition, Dr. Batanjski testified that the purpose of the new patient examination was to consider Measel's "whole body systems," and she admitted that her examination included Measel's "whole arm." Considering Dr. Batanjski's testimony, it does not appear that she limited her examination to the spinal source of any subluxations or misalignments. Therefore, the new patient examination exceeded the scope of the definition of "practice of chiropractic" under MCL 333.16401 as it existed on January 1, 2009, in light of the analysis in *Beno* and *Hofmann*.

Regarding the ultrasound and massage therapy, in *Beno*, 422 Mich at 343, our Supreme Court specifically held that "the use of . . . ultrasound devices for therapeutic purposes . . . [was] outside the scope of chiropractic," pursuant to former MCL 333.16401. Likewise, our Supreme Court explained that "[t]here is nothing in [the] wording [of former MCL 333.16401] which shows an intent to authorize the treatment of areas other than the human spine." *Beno*, 422 Mich at 317. The notes from Measel's massages indicate that during each massage, therapists spent time massaging Measel's extremities. Accordingly, the massages do not fall within the former definition of "practice of chiropractic" under MCL 333.16401 because they involved treatment to areas other than Measel's spine.

IV. CONCLUSION

Each of the disputed services was within PIP coverage under MCL 500.3107 because Auto Club admitted that the services were lawfully rendered and reasonably necessary for Measel's care. However, because each of the disputed services was "[a] practice of chiropractic service" that did not fall within the definition of "practice of chiropractic" under MCL 333.16401 as that statute existed on January 1, 2009, MCL 500.3107b(b) provides that reimbursement for the services was not required under Michigan's no-fault act.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan