*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PRECISE MRI OF MICHIGAN, LLC,

        Plaintiff-Appellee,

v

STATE AUTO INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
January 27, 2022
9:05 a.m.

No. 354653
Washtenaw Circuit Court
LC No. 20-000358-NF

Before: RICK, P.J., and RONAYNE KRAUSE and LETICA, JJ.

RONAYNE KRAUSE, J.

Defendant, State Auto Insurance Company, appeals by leave granted[1] the trial court's denial of its motion for partial summary disposition. Defendant argued that four of the six magnetic resonance imaging (MRI) scans performed by plaintiff, Precise MRI of Michigan, LLC, on nonparty Airee Martin following Martin's injuries sustained in a motor-vehicle accident, were not compensable under the no-fault act, MCL 500.3101 *et seq.*, because the MRIs were prescribed by a chiropractor, Hassan Reichouni. Defendant specifically argued that MRI scans were not included in the definition of "practice of chiropractic" under MCL 333.16401 as of January 1, 2009, as required by MCL 500.3107b(b). Plaintiff, on the other hand, argued summary disposition was premature, and the four MRIs prescribed by Reichouni were compensable because they were taken of Martin's spine, the examination of which is within the scope of chiropractic practice. Plaintiff also argued that because chiropractors could use x-rays to locate spinal subluxations, so too could MRIs be used to locate spinal issues. The trial court agreed with plaintiff. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Martin injured her neck, lower back, and shoulders in a July 2019 motor-vehicle accident. As a result of those injuries, Martin underwent six MRIs. Four of those MRIs—one of the cervical spine, one of the thoracic spine, one of the lumbar spine, and one of the sacroiliac (SI) joints—

---

[1] *Precise MRI of Mich, LLC v State Auto Ins Co*, unpublished order of the Court of Appeals, entered December 11, 2020 (Docket No. 354653).

were prescribed by Reichouni and conducted by plaintiff in September 2019. The other two MRIs were conducted by plaintiff in November 2019. It is not known who prescribed the November 2019 MRIs, but it was not Reichouni, and the record does not reflect any challenge by defendant to those two MRIs.

After defendant refused to reimburse plaintiff for services provided to Martin, plaintiff obtained an assignment of rights from Martin and filed a complaint against defendant alleging breach of contract and seeking declaratory relief. Defendant denied, or neither admitted nor denied, the allegations against it, and asserted the bills for the MRIs prescribed by Reichouni were not compensable under the no-fault act.

Defendant then moved for partial summary disposition of plaintiff's claim for benefits related to the four MRIs prescribed by Reichouni. Defendant noted that no-fault benefits were generally payable for medical expenses lawfully rendered and reasonably necessary for an insured's care. Defendant argued, however, that, pursuant to MCL 500.3107b(b), reimbursement was not required for a practice of chiropractic service unless that service was included in the definition of "practice of chiropractic" under MCL 333.16401 as of January 1, 2009. Defendant, relying on this Court's decision in *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55; 535 NW2d 529 (1995), asserted that because MRIs were not included in the definition of "practice of chiropractic" as defined under MCL 333.16401 as of January 1, 2009, and that definition specifically limited chiropractors to ordering x-rays to locate spinal issues, the MRIs prescribed by Reichouni were not compensable.

Plaintiff responded, asserting summary disposition was premature because discovery was not complete, and, in any event, the MRIs were compensable under the no-fault act. Specifically, plaintiff argued that because the MRIs related to evaluation of Martin's spine, Reichouni could lawfully prescribe them and they were, therefore, compensable. The trial court, without holding a hearing, denied defendant's motion for partial summary disposition "for the reasons stated in" plaintiff's responsive brief. Defendant applied for leave to appeal that denial, and this Court granted defendant's application. While this appeal was pending, this Court decided *Skwierc v Whisnant*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 355133); slip op at 5-7, which held that when an MRI is used for analysis of the spine, it falls within the scope of chiropractic practice as it was defined as of January 1, 2009.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision whether to grant or deny a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 120 (citations and quotation marks omitted).]

As noted in *Skwierc*, "Michigan is a state where the parameters of chiropractic care have been set not by the profession, but rather by politicians." *Skwierc*, ___ Mich App at ___; slip op at 3. Thus, "[b]ecause the scope of chiropractic is statutorily defined, the question whether a given activity . . . is within the authorized scope of chiropractic is primarily one of statutory construction to be decided by the court." *Id.*, quoting *Hofmann*, 211 Mich App at 67 (quotation marks omitted; alterations in original).

> This Court also reviews de novo questions of statutory interpretation. The first step when addressing a question of statutory interpretation is to review the language of the statute. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. Where the statutory language is clear and unambiguous, a court must apply it as written. [*Measel v Auto Club Group Ins Co*, 314 Mich App 320, 326; 886 NW2d 193 (2016) (quotation marks and citation omitted).]

"The primary goal of statutory interpretation is to give effect to the Legislature's intent." *In re Reliability Plans of Electric Utilities for 2017-2021*, 505 Mich 97, 119; 949 NW2d 73 (2020).

## III. "PRACTICE OF CHIROPRACTIC" AND THE COMPENSABILITY OF MRI SCANS

Defendant argues the MRIs prescribed by Reichouni and conducted by plaintiff are not compensable under the no-fault act. Specifically, defendant contends that, under MCL 500.3107b(b), reimbursement for the MRIs is precluded because MRIs were not included in the definition of "practice of chiropractic" under MCL 333.16401 as of January 1, 2009.[2] We disagree.

Generally, under the no-fault act, PIP benefits are payable for medical expenses that are reasonably necessary for an insured's care, recovery, and rehabilitation. MCL 500.3107(1)(a); *Measel*, 314 Mich App at 326; see also MCL 500.3157 (stating that a "reasonable amount" may be charged for products, services, and accommodations lawfully rendered to an injured person who is covered by insurance). However, in 2009, the Legislature enacted 2009 PA 222, which added MCL 500.3107b(b) to the no-fault act. MCL 500.3107b(b), an exception to the general rule in MCL 500.3107, states, in relevant part:

---

[2] Plaintiff also argued below that summary disposition was premature because discovery was not complete. To the extent plaintiff raises this argument on appeal, we disagree. "[A] party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence. The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292-293; 769 NW2d 234 (2009) (footnotes omitted). Plaintiff failed to identify any disputed factual issues relevant to the motion for partial summary disposition for which discovery was not yet complete, and did not attach any supporting affidavits. Thus, summary disposition was not premature. See *id.*

Reimbursement or coverage for expenses within personal protection insurance coverage under [MCL 500.3107] is not required for any of the following:

* * *

(b) A practice of chiropractic service, unless that service was included in the definition of practice of chiropractic under . . . MCL 333.16401, as of January 1, 2009. [MCL 500.3107b(b).[3]]

"2009 PA 222 was one of several tie-barred bills, all effective January 5, 2010, that addressed a tension between chiropractors and insurance providers regarding the scope of chiropractic care and related insurance liability." *Measel*, 314 Mich App at 327. "Along with 2009 PA 222, the Legislature also enacted 2009 PA 223, which expanded the scope of the definition of 'practice of chiropractic' under MCL 333.16401 of the Public Health Code." *Id*. "Thus, while 2009 PA 223 expanded the scope of the definition of 'practice of chiropractic,' 2009 PA 222 limited insurance providers' liability under the no-fault act for the newly included services." *Id*. (footnote omitted).

In *Skwierc*, this Court summarized the framework for determining whether a chiropractic service falls within the exception in MCL 500.3107b(b):

Under *Measel*, a court must first consider whether the services at issue were lawfully rendered and reasonably necessary for the insured's accident-related care. If so, then the services are "within PIP coverage under MCL 500.3107," and the next question is "whether each of the services was '[a] practice of chiropractic service' for purposes of MCL 500.3107b(b)." In *Measel*, this Court held that a "service is '[a] practice of chiropractic service' for purposes of MCL 500.3107b(b) if that service falls under the *current definition* of 'practice of chiropractic' provided by MCL 333.16401.

However, even if a service is determined to be within the current definition of "practice of chiropractic," reimbursement is not required under the no-fault act "unless the service 'was included in the definition of practice of chiropractic under [MCL 333.16401] . . . as of January 1, 2009.' " Thus, "if a service falls within PIP coverage under MCL 500.3107 and is '[a] practice of chiropractic service' under MCL 500.3107b(b), reimbursement is only required under the no-fault act if the service was included in the definition of 'practice of chiropractic' under MCL 333.16401 as that statute existed on January 1, 2009." [*Skwierc*, ___ Mich App at

---

[3] MCL 500.3107b was amended in 2020, effective July 1, 2020. 2020 PA 104. As of July 1, 2020, MCL 500.3107b(b) states that reimbursement is not required for "[a] practice of chiropractic service rendered before July 2, 2021, unless that service was included in the definition of practice of chiropractic under section 16401 of the public health code, 1978 PA 368, MCL 333.16401, as of January 1, 2009." As will be discussed, given our conclusion that MRIs were included in the definition of "practice of chiropractic" under MCL 333.16401 as of January 1, 2009, the amended version of MCL 500.3107b(b) has no substantive effect in this case. In any event, the MRIs at issue were taken on September 30, 2019, *before* the effective date of the amendment.

___; slip op at 4 (alterations and ellipsis in *Measel*; emphasis added in *Skwierc*; citations omitted).]

As of January 1, 2009, MCL 333.16401(1) stated:

> (b) "Practice of chiropractic" means that discipline within the healing arts which deals with the human nervous system and its relationship to the spinal column and its interrelationship with other body systems. Practice of chiropractic includes the following:
>
> (*i*) Diagnosis, including spinal analysis, to determine the existence of spinal subluxations or misalignments that produce nerve interference, indicating the necessity for chiropractic care.
>
> (*ii*) A chiropractic adjustment of spinal subluxations or misalignments and related bones and tissues for the establishment of neural integrity utilizing the inherent recuperative powers of the body for restoration and maintenance of health.
>
> (*iii*) The use of analytical instruments, nutritional advice, rehabilitative exercise and adjustment apparatus regulated by rules promulgated by the board pursuant to [MCL 333.16423], and the use of x-ray machines in the examination of patients for the purpose of locating spinal subluxations or misaligned vertebrae of the human spine. The practice of chiropractic does not include the performance of incisive surgical procedures, the performance of an invasive procedure requiring instrumentation, or the dispensing or prescribing of drugs or medicine. [*Measel*, 314 Mich App at 335-336, citing MCL 333.16401(1), as amended by 2002 PA 734.]

The trial court did not address the initial threshold questions. Rather, it only addressed whether the MRIs at issue were within the scope of chiropractic practice as of January 1, 2009, concluding the MRIs came within that definition. Defendant argues on appeal (as it did below), however, that plaintiff could not lawfully render MRIs prescribed by a chiropractor who acted outside the scope of his license, i.e., the MRIs prescribed by Reichouni were outside the scope of chiropractic practice and, therefore, not compensable. But as this Court stated in *Skwierc*, even if an MRI was "not within the practice of chiropractic as of January 1, 2009, as that term was defined by MCL 333.16401, such a determination does not necessarily render the MRI unlawful." *Skwierc*, ___ Mich App at ___; slip op at 4. In *Hofmann*, this Court explained:

> To be sure, only treatment lawfully rendered, including being in compliance with licensing requirements, is subject to payment as a no-fault benefit. It does not follow, however, that an activity is not lawfully rendered, and therefore not subject to payment as a no-fault benefit, merely because it is excluded from the statutory scope of chiropractic. [*Hofmann*, 211 Mich App at 64-65.]

This is so because "[t]he purpose of the licensing statute is not to prohibit the doing of those acts that are excluded from the definition of chiropractic, but to make it unlawful to do without a license those things that are within the definition." *Id*. at 65 (quotation marks and citation omitted).

-5-

After addressing the lawfulness of an MRI, the *Skwierc* Court analyzed whether the MRIs at issue came within the definition of "practice of chiropractic" under MCL 333.16401 as of January 1, 2009. *Hofmann*, however, necessitates a preliminary step before this analysis—whether use of the analytical instrument is barred by MCL 333.16423. *Hofmann*, 211 Mich App at 68-70. MCL 333.16423, as originally enacted and before it was amended by 2009 PA 221, provided:

> (1) The board shall promulgate rules to establish criteria for the approval of analytical instruments and adjustment apparatus to be used for the purpose of examining patients in locating spinal subluxations and misalignments of the human spine. The criteria established shall be substantially equivalent to nationally recognized standards in the profession for the use and operation of the instruments. The board may approve types and makes of analytical instruments that meet these criteria.
>
> (2) An individual shall not use analytical instruments or adjustment apparatus which does not meet nationally recognized standards or which is not approved by the board. [*Attorney General v Beno*, 422 Mich 293, 329; 373 NW2d 544 (1985).]

Mich Admin Code, R 338.12001(1)(f) defines "nationally recognized standards" as "that which is taught in a chiropractic educational program or postgraduate educational program that is accredited by the council on chiropractic education."

Before examining the extent to which a diagnostic examination came within the former definition of MCL 333.16401, the *Hofmann* Court concluded MCL 333.16423 "does not prohibit the use of an analytical instrument or adjustment apparatus if the instrument *either* (1) meets nationally recognized standards, *or* (2) has been approved by the Board of Chiropractic." *Hofmann*, 211 Mich App at 69 (emphasis in original). Thus, "if an analytical instrument or adjustment apparatus meets nationally recognized standards *or* has been approved by the board, its use is not prohibited by § 16423(2)." *Id*. at 70 (emphasis in original). In *Hofmann*, "each of the instruments" at issue[4] had been approved by the Board and, as a result, "none of the instruments" were prohibited by MCL 333.16423. *Id*. This Court noted it was, therefore, "unnecessary to assess independently the nationally recognized standards prong of § 16423(2)." *Id*. Accordingly, before reaching the question of whether MRIs come within the definition of "practice of chiropractic" as of January 1, 2009—*Skwierc* held that they do—we must first address whether MRIs constitute an analytical instrument that either meets "nationally recognized

---

[4] The instruments and services at issue in *Hofmann* included: (1) orthopedic and neurological examinations; (2) nutritional analysis and nutritional supplements; (3) cervical supports, cervical pillows, and lumbar supports; (4) cervical, spinal, and intersegmental traction; (5) hot and cold packs; (6) SOT blocking and wedges; (7) re-evaluation x-rays; and (8) pelvic x-rays. *Hofmann*, 211 Mich App at 61.

standards" or is "approved by the board." *Hofmann*, 211 Mich App at 68-70. We conclude that MRIs satisfy MCL 333.16423.

MRIs have indeed been approved by the Board, at least as of May 2010. A document from the Michigan Association of Chiropractors regarding the Board's approval of various analytical instruments, adjustment apparatus, physical measures, and tests related to the new chiropractic scope of practice[5] states, in relevant part:

**Analytical Instruments**

Instruments used in the diagnosis of human conditions and disorders of the human musculoskeletal and nervous systems as they relate to subluxations, misalignments and joint dysfunctions. These instruments shall be used for the purpose of detecting those conditions and disorders or offering advice to seek treatment from other health professionals in order to restore and maintain health, including, but not limited to:

\* \* \*

**X-ray**: For diagnostic purposes only[.]

\* \* \*

**Tests**

The performance, ordering or use of tests for the diagnosis of human conditions and disorders of the musculoskeletal and nervous systems as they relate to subluxations, misalignments and joint dysfunctions. These tests shall be for the purpose of detecting those conditions and disorders or offering advice to seek treatment from other health professionals in order to restore and maintain health, including, but not limited to:

\* \* \*

---

[5] This Court may take judicial notice of public records. See *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 649; 873 NW2d 842 (2015), citing MRE 201. We also note this Court's statement in *Measel*, 314 Mich App at 331: "On June 1, 2010, the Michigan Department of Community Health issued a letter to chiropractic licensees outlining an approved list of analytical instruments, adjustment apparatus, tests, and physical measures falling within the broadened scope of chiropractic practice under 2009 PA 223." The content of the June 1, 2020 letter is essentially identical to that found in the document from the Michigan Association of Chiropractors regarding the Board's approval of various analytical instruments, adjustment apparatus, physical measures, and tests. This Court can take judicial notice of its own records. See, e.g., *In re Albert*, 383 Mich 722, 724; 179 NW2d 20 (1970); *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

**Ordering and use of non-invasive imaging tests, consistent with modern technology and related to spinal subluxations**: May use an MRI of the spine to determine a patient's biomechanical problems in the spine or to offer advice to seek treatment from other healthcare professionals in order to restore or maintain health if the condition is outside the scope of chiropractic[.]

Although we lack information regarding whether MRIs were on the approved list of analytical instruments as of January 1, 2009, such information is irrelevant. MCL 500.3107b(b) refers to the "practice of chiropractic" as *that term* was defined on January 1, 2009. The definition of "practice of chiropractic" as of January 1, 2009, includes the use of analytical instruments as approved by the Board. See *Measel*, 314 Mich App at 335-336, citing MCL 333.16401(1), as amended by 2002 PA 734. Nowhere in the definition of "practice of chiropractic" as of January 1, 2009, does it require an analytical instrument be approved by the Board by a specific date. Thus, even if MRIs did not receive approval by the Board until after January 1, 2009, they are still just that—approved by the Board. Accordingly, MRIs are, at a minimum, not necessarily excluded from the practice of chiropractic under MCL 333.16423.

Moreover, although the list from the Michigan Association of Chiropractors places MRIs under the "Tests" subheading, this Court is "interested not in form or color but in nature and substance." *Wilcox v Moore*, 354 Mich 499, 504; 93 NW2d 288 (1958); see also *Westfield Companies v Grand Valley Health Plan*, 224 Mich App 385, 389-390; 568 NW2d 854 (1997) (refusing to "put[] form over substance" to deny coverage under a contract). Thus, to hold inclusion of MRIs under the "Tests" subheading as dispositive of whether MRIs are reimbursable under the no-fault act would inappropriately exalt form over substance. Therefore, because MRIs are approved by the Board, MRIs such as those at issue here are not necessarily excluded from the practice of chiropractic under MCL 333.16423.[6]

"[T]he mere fact that an instrument has been approved by the board, and thus is not prohibited by § 16423(2), is not determinative of whether the instrument falls within the permissible scope of chiropractic in the first instance." *Hofmann*, 211 Mich App at 70. Accordingly, "to resolve the initial 'scope' question, we must look to the definition of 'practice of chiropractic' " in MCL 333.16401(1)(b) "and determine whether the use of a given instrument is allowed under that definition." *Id.* This determination was made in *Skwierc*, where this Court concluded MRIs meet the definition of "practice of chiropractic" in MCL 333.16401 as of January 1, 2009, and, thus, are compensable. *Skwierc*, ___ Mich App at ___; slip op at 5-7.

The trial court denied defendant's motion for partial summary disposition for the reasons provided in plaintiff's responsive brief. Although somewhat convoluted, plaintiff argued in its responsive brief that an MRI was a "more advanced" and "safer" tool than an x-ray machine for locating and diagnosing spinal subluxations and misaligned vertebrae. Additionally, plaintiff asserted that, regardless of the advantages or disadvantages between an MRI and x-ray, "they are

---

[6] Given our conclusion that MRIs constitute an analytical instrument that is "approved by the board," we need not address whether MRIs meet "nationally recognized standards." See *Hofmann*, 211 Mich App at 70.

both analytical-diagnostic tools with the capability of locating spinal subluxations and/or misaligned vertebrae . . . " Thus, plaintiff's argument below was premised on (1) using MRIs as a means of diagnosis, by spinal analysis, to determine the existence of spinal subluxations or misalignments under MCL 333.16401(1)(b)(*i*) as of January 1, 2009; and (2) MRIs qualifying as an "analytical instrument" used to locate spinal subluxations or misaligned vertebrae under MCL 333.16401(1)(b)(*iii*) as of January 1, 2009. The *Skwierc* Court addressed both Subparagraphs on which plaintiff relied, concluding MRIs come within Subparagraphs (*i*) and (*iii*).

In *Skwierc*, the plaintiff sought treatment from a chiropractor for low back pain after an automobile accident. *Skwierc*, ___ Mich App at ___; slip op at 2. Pursuant to a referral from the chiropractor, the medical provider performed an MRI of the plaintiff's lumbar spine. *Id*. The plaintiff assigned his rights to the medical provider. *Id*. After the plaintiff sued the defendant and insurer, the medical provider intervened and filed a complaint seeking reimbursement from the insurer for services provided to the plaintiff. *Id*.

The medical provider moved for summary disposition, asserting there was no genuine issue of material fact that it was "entitled to compensation for the MRI performed on [the plaintiff]." *Skwierc*, ___ Mich App at ___; slip op at 2. The medical provider alleged that the insurer improperly denied its claim on the basis that " 'an MRI ordered by a chiropractor is not within the scope of chiropractic medicine and therefore not compensable under the No-Fault Act.' " *Id*. Asserting that an MRI constituted "an analytical instrument, tool, or method used by chiropractors to diagnose spinal conditions," and the MRI at issue was ordered to "diagnose the source of [the plaintiff's] low back pain," the medical provider argued it was entitled to reimbursement for the MRI under MCL 500.3107b(b) because an MRI was "within the definition of chiropractic practice under MCL 333.16401 as of January 1, 2009." *Id*. The insurer countered and sought partial summary disposition of the medical provider's charges for the MRI services. *Id*. The insurer argued that it "had not wrongfully denied the claim because the MRI was outside the scope of chiropractic practice as of January 1, 2009," and, thus, not compensable under MCL 500.3107b(b). *Id*.

The trial court denied the medical provider's dispositive motion and granted the insurer's motion, concluding the insurer was not required to reimburse the medical provider for the MRI under the no-fault act. *Skwierc*, ___ Mich App at ___; slip op at 2. The trial court found that the MRI was "outside the scope of chiropractic practice" and concluded that the chiropractor "engaged in the unauthorized practice of medicine when ordering the MRI." *Id*. This Court reversed, explaining that "[r]esolution of the initial scope question requires us to consider the above statutory definition of 'practice of chiropractic' [in MCL 333.16401 as of January 1, 2009,] and 'determine whether the use of a given instrument is allowed under that definition.' " *Id*. at 5, quoting *Hofmann*, 211 Mich App at 70. Analyzing the issue, the *Skwierc* Court concluded that MRIs were within the definition of practice of chiropractic as of January 1, 2009. *Skwierc*, ___ Mich App at ___; slip op at 5-7.

The *Skwierc* Court concluded that the plaintiff's lumbar spine MRI fell within Subparagraphs (*i*) and (*iii*) of MCL 333.16401(b) as of January 1, 2009. *Skwierc*, ___ Mich App at ___; slip op at 5-7. First, under MCL 333.16401(1)(b)(*i*), the practice of chiropractic included "[d]iagnosis, including spinal analysis, to determine the existence of spinal subluxations or misalignments that produce nerve interference, indicating the necessity for chiropractic care."

-9-

*Skwierc* noted that a chiropractic "diagnosis" was "limited to the determination of existing spinal subluxations or misalignments, which can only be located at their source, i.e., the spine." *Skwierc*, ___ Mich App at ___; slip op at 6 (quotation marks and citation omitted). This Court noted the trial court's findings that the lumbar spine MRI did not fall under Subparagraph (*i*) because MRIs must be interpreted by a doctor to reach a diagnosis and, thus, by themselves, MRIs did not constitute a diagnosis. *Id*. This Court concluded, however, that the trial court seemingly "misunderstood the applicable limits on a chiropractor's diagnostic authority in this context, which is essentially defined by the distinction between spinal and non-spinal areas." *Id*., citing *Hofmann*, 211 Mich App at 85-87. This Court further stated:

> "[A] chiropractor's diagnostic authority includes the authority to perform 'spinal analysis,' which encompasses 'monitor[ing] the body's physiology for the purpose of determining subluxated or misaligned vertebrae or related bones and tissues,' " but "a chiropractor's authority to analyze and monitor the body's physiology necessarily is limited to the spinal area only . . . ." Because the MRI in this case was limited to a portion of the spine, its use was not outside the scope of chiropractic diagnostic authority. The trial court erred by concluding otherwise. [*Skwierc*, ___ Mich App at ___; slip op at 6 (first alteration and ellipsis added in *Skwierc*; second alteration in *Hofmann*; citations omitted).]

Thus, when an MRI is "limited to a portion of the spine," its use comes within the definition of "practice of chiropractic" as that term is defined under MCL 333.16401(1)(b)(*i*) as of January 1, 2009. *Id*.

Under MCL 333.16401(1)(b)(*iii*), the practice of chiropractic includes the "use of analytical instruments . . . regulated by rules promulgated pursuant to [MCL 333.16423] . . . for the purpose of locating spinal subluxations or misaligned vertebrae of the human spine." In *Skwierc*, this Court noted that, as of January 1, 2009, "analytical instruments" was "defined by rule to mean 'instruments which monitor the body's physiology for the purpose of determining subluxated or misaligned vertebrae or related bones and tissues.' " *Skwierc*, ___ Mich App at ___; slip op at 6, quoting 2006 Annual Admin Code Supp, R 338.12001(b); see also *Hofmann*, 211 Mich App at 85 (citing earlier version of this rule containing the same language). As *Skwierc* notes, this Court previously described the nature of an MRI as "a scanning technology that permits detailed, potentially three-dimensional viewing of soft tissue structures within the body-such as muscles, nerves, and connective tissue-without using ionizing radiation; as distinct from x-rays or CT scans, which do subject the body to ionizing radiation and are much less useful for visualizing soft tissue." *Chouman v Home Owners Ins Co*, 293 Mich App 434, 442 n 4; 810 NW2d 88 (2011). Thus, *Skwierc* held that, "when used for an analysis of the spine, it is clear that an MRI falls within the scope of chiropractic practice as it was defined in January 1, 2009." *Skwierc*, ___ Mich App at ___; slip op at 6-7, citing *Hofmann*, 211 Mich App at 87-88.[7] This Court therefore concluded

---

[7] To the extent defendant's argument can be read as asserting that x-rays are the only imaging technology usable by chiropractors, *Skwierc* rejected this argument. Specifically, this Court stated that the practice of chiropractic included the "use of analytical machines . . . *and* the use of x-ray machines . . . " *Skwierc*, ___ Mich App at ___; slip op at 7, quoting MCL 333.16401(1)(b)(*iii*), as

that because an MRI "satisfies the definition of 'analytical instrument[],' its appropriate use is within the practice of chiropractic as of January 1, 2009." *Skwierc*, ___ Mich App at ___; slip op at 7.

Accordingly, we conclude that, under *Skwierc*, at least three of the four MRIs for which defendant refused to reimburse plaintiff are clearly included within the scope of chiropractic because they were limited to an analysis of the spine and were used to detect and diagnose conditions related to subluxations and misalignments in Martin's spine. Specifically, three of the MRIs focused on Martin's cervical, thoracic, and lumbar spine. The summaries of the cervical, thoracic, and lumbar spine MRIs indicated there was no evidence of fractures or subluxation, and little to no disc herniation. Because these three MRIs were limited to an analysis of Martin's cervical, lumbar, and thoracic spine, their use in such a manner is permitted by MCL 333.16401(1)(b)(*i*) and (*iii*), and plaintiff may be reimbursed for performing these scans on Martin. *Skwierc*, ___ Mich App at ___; slip op at 5-7.

Determining whether the fourth MRI at issue, which involved an analysis of Martin's SI joint, is compensable requires first determining whether the SI joint constitutes a part of the spine. We conclude that it does.

According to the Mayo Clinic, "[t]he sacroiliac [(SI)] joints link your pelvis and lower spine. They're made up of the sacrum—the bony structure above your tailbone and below your lower vertebrae—and the top part (ilium) of your pelvis." Mayo Clinic, *Sacroiliac Joints Diagram*, < https://www.mayoclinic.org/diseases-conditions/sacroiliitis/symptoms-causes/syc-20350747#dialogId17614615 > (accessed December 12, 2021). Moreover, whether the SI joints constitute part of the spine for purposes of this appeal, this Court in *Hofmann* explained that "[t]he relevant inquiry, as we see it, is not whether the pelvis as a whole comprises part of the spine, but rather, as the statute indicates, whether a pelvic x-ray serves the purpose of 'locating spinal subluxations or misaligned vertebrae of the human spine.' " *Hofmann*, 211 Mich App at 71, quoting MCL 333.16401(1)(b)(*iii*). The Attorneys' Dictionary of Medicine, quoted with approval by *Hofmann*, 211 Mich App at 71-72, defines the pelvis and spine respectively as follows:

> [*Pelvis*.] 1. An irregularly formed ring or girdle of bones, sometimes compared to a basin, at the lower end of the trunk, supported on the thigh bones and itself supporting the spine. It is composed of two roughly semicircular hip bones (innominate bones) *and the lower, wedgeshaped end of the spine (sacrum and coccyx)*. The two hip bones unite in front, but in the back they leave a gap which is filled in by the *part of the lower spine called [the] sacrum*. The coccyx is continued below the sacrum but does not touch the hip bones. The pelvis or the pelvic girdle is, therefore, actually composed of the two innominate bones *and the sacrum*. The coccyx is merely an extension. Each innominate bone (os coxae) is composed of three parts, ilium, ischium, and pubis. The spine sits on top of the

---

amended by 2002 PA 734 (emphasis in original). Thus, the *Skwierc* Court concluded, x-ray machines could be used "*in addition to* the broader category of 'analytical instruments.' " *Skwierc*, ___ Mich App at ___; slip op at 7.

sacrum. . . . [*The Attorneys' Dictionary of Medicine* (2000), p P-133 (emphasis added).]

> [*Spine.*]  1.  The flexible bony column, in the back of the body, composed of 33 irregularly shaped, ring-like bones placed one on top of the other and held together by ligaments and muscles.  Each individual bone is called *vertebra*, and the lower nine of these are fused together to form two larger bones, *the sacrum and the coccyx.*  [*The Attorneys' Dictionary of Medicine* (2000), p S-245 (second emphasis added).]

As this Court concluded in *Hofmann*:

> These definitions disclose that, while the pelvis as a whole is not part of the spine, both the sacrum and the coccyx, which comprise part of the pelvis, also comprise part of the spine.  Here, each of the plaintiffs testified, and the trial court found, that the purpose of a pelvic x-ray is to determine the existence of a sacral subluxation.  Because the sacrum is considered part of the spine, a sacral subluxation would constitute a spinal subluxation within the meaning of the statute.  We conclude, therefore, that a pelvic x-ray taken "for the purpose of locating [a sacral] subluxation" is authorized by § 16401(1)(b)(iii).  [*Hofmann*, 211 Mich App at 72 (alteration in original).]

We conclude that the definition of "pelvis" and "spine" in The Attorneys' Dictionary of Medicine, *Hofmann*'s discussion of the pelvis, and the Mayo Clinic's description of the SI joints, lead to the conclusion that the SI joints comprise part of the spine.  The summary of the SI joint MRI indicates Martin complained of pain in her SI joints and sacrum.  The summary also indicates a finding that the "sacrum and coccyx . . . appear[ed] to be intact" and "[n]o abnormal soft tissue structure [was] seen anterior or posterior to the [SI] joints."  Because the SI joints include the sacrum, a part of the spine, and the MRI was limited to Martin's SI joint,[8] the use of the MRI to analyze Martin's SI joints is permitted by MCL 333.16401(1)(b)(*i*) and (*iii*).  *Skwierc*, ___ Mich App at ___; slip op at 5-7.  As such, plaintiff may also be reimbursed for the fourth MRI of Martin's SI joints.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Michelle M. Rick
/s/ Anica Letica

---

[8] The summary indicated Martin's uterus was "[i]ncidentally" observed when the MRI was performed.  "[T]o the extent that an MRI 'might reveal a condition that is not amenable to chiropractic treatment does not remove it from the purview of § 16401(1)(b)(*iii*).' " *Skwierc*, ___ Mich App at ___; slip op at 7, quoting *Hofmann*, 211 Mich App at 72.