*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS VANDUINEN and DEZAAK
MANAGEMENT,

        Plaintiffs-Appellants,

v

SKIBA INSURANCE SERVICES and NORTHERN
MUTUAL INSURANCE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
October 12, 2023

No. 361273
Alpena Circuit Court
LC No. 2021-001140-CZ

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Plaintiffs, Thomas VanDuinen (VanDuinen), appearing *in propria persona*, and DeZaak Management (DeZaak), appeal as of right the trial court's order granting summary disposition in favor of defendants, Skiba Insurance Services (Skiba) and Northern Mutual Insurance Company (Northern). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs filed a complaint alleging that they owned property located at 1116 Ford Avenue in Alpena, Michigan. This property was sold by land contract to Sabryna Urban (Urban) in July 2014. However, after Urban was unable to pay the land contract balance, she quitclaimed the property back to plaintiffs in December 2019. Plaintiffs asserted that Urban's father, Jason Urban, and others moved onto the property as squatters. VanDuinen claimed that he attempted to evict the squatters in March 2020, but a moratorium on evictions was in place because of the pandemic. Consequently, he was unable to evict the squatters until after January 21, 2021. At that time, he found the nearly $100,000 damage to the premises by the squatters. Plaintiffs' complaint did not identify any cause of action against Skiba or Northern. Instead, it was claimed that because correspondence was sent to the Ford Avenue property instead of plaintiffs' business address on Washington Avenue, the squatters learned that there was no insurance policy in effect and

-1-

committed the vandalism to financially harm plaintiffs. Plaintiffs submitted that the squatters would not have damaged the property if they were aware of a valid insurance policy in effect.[1]

Skiba moved for summary disposition under MCR 2.116(C)(10), claiming its employees issued the policy of insurance in accordance with VanDuinen's representation that he was moving into the property and a homeowner's policy was appropriate. However, after a chimney was discovered on the garage of plaintiffs' property, two phone messages were left with VanDuinen questioning whether a wood stove was present on the property. It was asserted that VanDuinen's failure to respond to this inquiry resulted in the cancellation of the policy. Skiba alleged that it did not breach any duty owed to plaintiffs and that its actions were not the proximate cause of plaintiffs' injuries. Northern also moved for summary disposition under MCR 2.116(C)(10), claiming that it complied with the policy provisions and MCL 500.2123 for cancellation of the policy. Additionally, it was noted that the insurance was in effect from January 14, 2020 to January 14, 2021, plaintiffs did not pay the remaining three premium payments for this policy, and the damage to the property occurred after the expiration of this policy.

Plaintiffs opposed the motions for summary disposition. In an affidavit, VanDuinen contradicted the averments by Skiba's employees. He asserted that he merely signed an application for insurance, and Skiba's employees, including a representative not licensed to sell insurance, prepared the remainder of the form. VanDuinen also denied ever receiving notice of the cancellation of the policy. Plaintiffs claimed that the documentary evidence created factual issues that precluded summary disposition. However, at the hearing on the dispositive motions, VanDuinen acknowledged to the trial court that he did not make the remaining premium payments on the policy purportedly in effect from January 14, 2020 through January 14, 2021. The trial court granted defendants' motions for summary disposition. The trial court further denied plaintiffs' motion for reconsideration and request for disqualification.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Batista v Office of Retirement Servs*, 338 Mich App 340, 354; 980 NW2d 107 (2021). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Id*. Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

---

[1] Defendants did not move for summary disposition under MCR 2.116(C)(8) or challenge the assertion that defendants should have protected plaintiffs from the criminal activity by the squatters. See *Lelito v Monroe*, 273 Mich App 416, 419; 729 NW2d 564 (2006). However, defendants did challenge VanDuinen's representation of himself as well as the corporate entity. Consequently, plaintiffs did retain counsel who filed a limited appearance.

"This Court reviews for an abuse of discretion a trial court's factual findings regarding a motion for disqualification while its application of the facts to the law is reviewed de novo." *TT v KL*, 334 Mich App 413, 431; 965 NW2d 101 (2020).

## III. ANALYSIS

Plaintiffs first allege that the trial court erred in granting summary disposition in favor of Skiba. We disagree.

Although plaintiffs failed to identify a specific cause of action and delineate the elements of the claim against Skiba, Skiba contends that plaintiffs failed to demonstrate the elements of duty and proximate cause for purposes of negligence. Indeed, the plaintiff must prove four elements to establish a prima facie case of negligence: (1) the defendant owed the plaintiff a legal duty; (2) the legal duty was breached by the defendant; (3) the plaintiff suffered damages; and (4) the defendant's breach was a proximate cause of the plaintiff's damages. *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 552; 942 NW2d 696 (2019) (citation omitted). To maintain a negligence action, a plaintiff must demonstrate that a legal duty exists that requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. *Id*. (citation omitted). An examination of the relationship between the parties must occur to determine if it is the type that a legal obligation should be imposed on one for the benefit of the other. *Id*. When determining whether a duty exists, factors to consider include "foreseeability of the harm, existence of a relationship between the parties involved, degree of certainty of injury, closeness of connection between the conduct and the injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach." *Krass v Tri-County Security, Inc*, 233 Mich App 661, 668-669; 593 NW2d 578 (1999).

Under the common law, an insurance agent owed various fiduciary obligations that included the duty to act for the benefit of the client. See *Harts v Farmers Ins Exch*, 461 Mich 1, 6-7; 597 NW2d 47 (1999). An insurance agent does not have a duty to advise of the adequacy of the insurance when it acts as a mere order taker for the insurance company, but a special relationship arises between the agent and the client when the agent undertakes the role of counselor or advisor. See *id*. at 9-10. There is a presumption that a party that executes a contract has read the contract. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 59; 664 NW2d 776 (2003) ("[O]ne who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." (citation omitted).)

When moving for summary disposition, Skiba presented the affidavit of Julie Jansen, a licensed insurance "producer/agent" in Michigan since 2008. In her presence, VanDuinen came into Skiba's office and told Skiba's customer service representative Chelsea Mausolf that he was moving into the home located at 1116 Ford Avenue in two weeks. In light of this representation, Jansen and Mausolf prepared an application for homeowner's insurance. VanDuinen allegedly never advised that this home was occupied by others or that it was owned by DeZaak. Jansen averred that VanDuinen provided no other address for the Ford address and did not request that the tenant file of the Urbans be examined. Jansen heard Mausolf advise that the premium was $787, and VanDuinen opted to pay it in quarterly installments and provided the first payment of $199. The policy was to be in effect from January 14, 2020 to January 14, 2021. After Jansen

took photos of the garage that included a chimney, Northern requested information addressing whether a wood stove was present. Skiba's records indicated that two voicemails were left for VanDuinen seeking this information, but he never responded. Consequently, Northern sent correspondence to VanDuinen dated March 9, 2020, that the policy would be cancelled on April 9, 2020 for noncompliance with policy conditions to the address listed on the policy application. Jansen noted that there was no record that plaintiffs made the three remaining premium payments. Jansen next had contact with VanDuinen on January 25, 2021 when he sought to apply for another policy. But after Jansen saw the home's condition, she advised that Skiba would not submit an application for insurance. Jansen denied that VanDuinen ever apprised them of holdover tenants or an eviction. The Mausolf affidavit reiterated the same details set forth in the Jansen affidavit.

In contrast, VanDuinen presented his own affidavit. He averred that DeZaak submitted a payment to Skiba on January 7, 2020 in the amount of $199. He also claimed DeZaak wrote a check to Skiba for $467 on January 24, 2021. VanDuinen denied that he told Skiba of his intent to reside at 1116 Ford Avenue. Additionally, he advised that the billing address was 1209 W. Washington Avenue, his home address and the office address of DeZaak. VanDuinen claimed that he questioned Mausolf about the adequacy of the insurance for the property and its occupants, the Urbans. He averred that he signed a blank form for Mausolf and never filled out the application. VanDuinen asserted that he was never given notice of the cancellation of the policy. He further alleged that Skiba did not advocate for plaintiffs but "sided" with Northern.

VanDuinen may have submitted an affidavit to contradict Skiba's claims that he represented that he was the occupant of 1116 Ford Avenue and did not provide another address. But, he failed to dispute that Skiba's employees made two phone calls and left two voicemails for him to address whether there was a wood stove located in the garage because of a chimney. Additionally, he did not dispute, upon questioning by the trial court, that he failed to make the three remaining premium payments on the policy. Further, VanDuinen did not contest that the policy of insurance term ran from January 14, 2020 to January 14, 2021, and the damage occurred after the service of the eviction on January 21, 2021. Accordingly, even if it was assumed that VanDuinen apprised Skiba's employees that the Urbans were still the tenants in the property and that the pertinent mailing address was 1209 W. Washington such that Skiba's employees breached a duty to plaintiffs, Skiba was not the proximate cause of plaintiffs' injuries. Plaintiffs did not sustain any damages during the policy period rather the damage occurred after this policy expired. Consequently, the trial court did not err in granting summary disposition in favor of Skiba.

Next, plaintiffs contend that the trial court erred in granting summary disposition in favor of Northern and the decision deprived them of the right to a trial by jury. Again, we disagree.

To establish an action for breach of contract, a party must show, by a preponderance of the evidence, that: (1) there was a contract; (2) the other party breached the contract; and (3) there were damages incurred by the party claiming breach. *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 393; 964 NW2d 846 (2020). As an initial matter, the policy at issue expressly provided that it governed the period from January 14, 2020 to January 14, 2021. It further stated that it covered "only losses that occur during the policy period." The deputy did not serve the eviction notice until January 21, 2021. When the deputy returned the next day, he observed the damage to the property. Thus, the trial court did not err in granting summary

-4-

disposition in favor of Northern because the claimed damage occurred outside the policy period. VanDuinen's affidavit did not address or claim that the damage occurred within the policy period.

With regard to plaintiffs' claim that Northern did not properly provide notice of cancellation, the policy expressly addressed cancellation. The policy provided that " '[w]e' may cancel or not renew this policy by written notice to 'you' at the address shown on the 'declarations'. Proof of delivery or mailing is sufficient proof of notice." The policy went on to state that during "the first 59 days this policy is in effect 'we' may cancel for any reason. 'We' will give 'you' notice at least ten days before cancellation is effective." The cancellation notice was mailed on March 9, 2020, within 55 days of the January 14, 2020 policy issuance. It became effective on April 9, 2020. MCL 500.2123, consistent with the policy terms, provides that the notice of termination must be mailed or delivered "within the first 55 days" after the initial issuance of a policy and may be effective not less than 20 days after the date of mailing or delivery. MCL 500.2123(2). The notice of cancellation was mailed to the address on the declarations page, specifically the Ford Avenue address. Thus, there is no indication that Northern failed to comply with the insurance policy terms or MCL 500.2123. And, as the trial court held, plaintiffs only submitted one of four quarterly premium payments, providing further grounds to terminate the policy. In light of the above, if plaintiffs had specifically delineated a claim for breach of insurance policy contract, the trial court did not err in granting summary disposition in favor of Northern.

Additionally, the grant of summary disposition did not deprive plaintiffs of the right to a trial by jury. "If there are not issues of fact to be determined, one is not entitled in a civil case to trial by jury." *Peoples Wayne Co Bank v Wolverine Box Co*, 250 Mich 273, 281; 230 NW 170 (1930). "The summary [disposition] law does not deprive a defendant of a right to trial by jury if the affidavits present no question of fact." *Id*. Plaintiffs' contention that summary disposition was a deprivation of the right to a jury trial is without merit.

Finally, plaintiffs contend that the trial court erred in failing to disqualify itself, an issue raised for the first time in their motion for reconsideration. We disagree.

To preserve the denial of a motion for judicial disqualification, the moving party must request a referral to the chief judge after the challenged judge denied the motion for disqualification. MCR 2.003(D)(3)(a)(i); *Sinicropi v Mazurek*, 273 Mich App 149, 176 n 15; 729 NW2d 256 (2006). If the challenged judge is a single-judge court or is also the chief judge, "on the request of a party, the challenged judge shall refer the motion to the state court administrator for assignment to another judge, who shall decide the motion de novo." MCR 2.003(D)(3)(a)(ii). There is no indication that plaintiffs requested a referral to any other judge situated in the county or that they sought a referral through the state court administrator. This issue is not preserved for appellate review.

This Court reviews for an abuse of discretion the trial court's factual findings on a motion to disqualify and reviews de novo the trial court's application of the facts to the law. *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). A trial court commits an abuse of discretion when its decision falls outside the range of reasonable and principled outcomes. *Jackson v Bulk AG Innovations, LLC*, 342 Mich App 19, 24; 933 NW2d 11 (2022).

Disqualification of a judge is warranted if the judge has personal knowledge of disputed evidentiary facts pertaining to the proceeding. MCR 2.003(C)(1)(c). Additionally, disqualification should occur if the judge was "consulted or employed as an attorney in the matter in controversy." MCR 2.003(C)(1)(d). The moving party bears the burden of proving that disqualification of the trial judge is warranted. *Michigan Ass'n of Policy v City of Pontiac*, 177 Mich App 752, 757-758; 442 NW2d 773 (1989). "A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Mitchell*, 296 Mich App at 523. Adverse rulings by a trial judge against a party do not present sufficient grounds to require disqualification. *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009).

The trial court denied plaintiffs' request for disqualification, noting that they failed to meet the requirements of MCR 2.003(C) and (D). Plaintiffs failed to challenge the basis of the trial court's ruling, and therefore, we need not even consider granting them the requested relief. *Derderian v Genesys Health Care Sys*, 264 Mich App 364, 381; 689 NW2d 145 (2004). Although plaintiffs contend that the trial judge demonstrated actual bias, plaintiffs failed to present any specific details to substantiate this claim. Adverse rulings by the trial court are insufficient to demonstrate such bias. *In re Contempt of Henry*, 282 Mich App at 680. Accordingly, plaintiffs failed to demonstrate entitlement to appellate relief.

Affirmed. Defendants, the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado